JOHN E. CONE, Appellant, *v.* ADAMSON B. NEWKIRK, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

A., acting as the agent of B., with the understanding that he was to have a reasonable sum for his services, made a contract with C. in reference to certain lands. This contract A. afterwards assigned to B. for the consideration as expressed in the assignment, of one thousand dollars. In the absence of all proof on this point, it must be held that one thousand dollars was the price agreed upon for the assignment, and B. is, in equity, liable for that sum.

THIS was a proceeding in chancery, by appellant against appellee, to have a certain writing of agreement delivered up, and an assignment indorsed thereon, canceled.

On the trial, the court below dismissed the bill at appellant's cost, who now brings the case by appeal to this court.

The material portions of the evidence will be found incorporated in the opinion.

JOHN E. CONE, *pro se.*

BARKER & TULEY, for Appellee.

BREESE, J. It appears, from the proofs in this cause, that an agreement was entered into between these parties on the 20th of March, 1854, by which complainant, a practicing lawyer of Chicago, agreed to give to defendant the full and exclusive benefit of all information he then had or might thereafter, during the continuance of the agreement, acquire, of the title to real property in Cook county; and for that purpose would examine the records in the office of that county, and enter in a book to be furnished by defendant, minutes or abstracts of the title of such tracts of land to which there were adverse titles and interests, as in complainant's opinion should be worth entering in such book, for the purpose and best interest of the defendant. He further agreed to do such other professional business as the defendant might require of him to do, in and about defendant's own business, and not otherwise. The defendant to pay complainant five hundred dollars per annum for such services, in monthly payments, and to pay for all disbursements made by complainant in doing the business as it might be necessary from time to time. It was further agreed, that either party might cancel the agreement by giving the other party thirty days' notice in writing.

The defendant was a practicing physician in Chicago, uniting with his business of healing the sick, that of speculating in doubtful titles. Complainant and defendant occupied the same office.

About three or four weeks after this contract was made, and complainant doing business under it, it appears by the testimony of George W. J. Cone, the brother of complainant, that complainant, through the witness, sent a written notice to defendant, notifying him, that he, complainant, had put an end to this contract. This was on Saturday evening. On the following Monday, witness was requested by the defendant to go to his office, which he did, and there the defendant told him that he had received the notice, together with a note or letter, both of which defendant took from his pocket and read to witness, and said to him, that he had not intended to hold complainant to the terms of the contract, and requested witness to say to complainant, that if he would go on with the defendant's business, he should be paid what was right and reasonable. Complainant did go on with defendant's business, and brought a suit for defendant against Rosella Chapron, for a certain tract of land. At this time, and up to the latter part of the winter of 1855, various efforts had been made by the defendant to purchase of one Charles S. Wright, of Racine, Wisconsin, certain lands in Sec. 6, T. 39 north, R. 14 east, belonging to him, which were in dispute, and which had failed, Wright declining to sell to

defendant at the price offered. In one of the conversations of defendant with Wright, he, Wright, said that he had made an agreement with the complainant to litigate the title, by which complainant was to receive one-tenth of the lands recovered, and that he could get along without selling.

Out of this agreement by the complainant with Wright, this controversy arises. It was a written agreement, and is Exhibit 6, and bears date, September 21, 1854. After the formal facts, and describing the lands, it stipulates in substance, that complainant was to recover the property from a sale under an execution, and prosecute to final judgment all suits that might be necessary for that purpose, and to use all reasonable diligence, etc., and clear the title as soon as it could be done by due course of law. The conveyance of one-tenth to be made to complainant, so soon as the title was established in Wright.

On the seventh day of October, 1854, the complainant wrote upon this agreement as follows: " In consideration of one thousand dollars, I hereby assign my interest in the above agreement to Adamson B. Newkirk, of the city of Chicago, county of Cook, State of Illinois, and said Newkirk hereby agrees to perform the agreements or covenants on my part to be performed by virtue hereof. Witness my hand and seal, etc., JOHN E. CONE. [SEAL.] "

This agreement, thus assigned, came into the possession of defendant by some means unexplained, and was placed by him on record the same day the assignment bears date.

*George Cone* testifies, that he knows, in September or October, 1854, after the date of this contract, there was an agreement partially concluded between complainant and defendant, by which complainant was to assign this contract with Wright to the defendant, and devote all of his time and legal knowledge to the examination and litigation of land titles which the defendant might purchase, and the defendant was to devote his time to purchasing, when he was directed so to do by the legal opinion of complainant, together with defendant's own judgment; he, defendant, to furnish money necessary for the purchases, and was to pay and cancel the indebtedness of complainant; and an agreement was reduced to writing between them, for a copartnership in this kind of business, the complainant to have one-third and the defendant two-thirds of the profits. This draft of an agreement witness afterwards saw in the possession of the defendant, who said he should not execute it, as it was not written as he understood the contract, and then asked witness if he, witness, did not understand the agreement to exclude the Wright matter; that he, defendant, understood, that any subsequent purchase he might make of the Wright lands was to

be excluded from the partnership. The witness told him that he understood it otherwise. Pending this conversation, the complainant entered the office where this conversation took place, and he and defendant commenced talking; the complainant claiming that the agreement was to include all purchases made after its date, whether from Wright or any one else; the defendant said the agreement was all right, except including purchases that might be made of Wright, and that he would not sign the agreement. Before this conversation, witness had seen complainant write an assignment of his agreement with Wright to the defendant; witness cautioned complainant not to sign the assignment until the agreement between him and the defendant had been first executed, when complainant said, that he should not deliver it until the agreement between him and the defendant was "all fixed up." Did not see the assigned agreement afterwards, until he saw it at the recorder's office; the copartnership agreement was never executed, nor any copartnership entered into, nor did the defendant, to his knowledge, pay any of complainant's debts.

Complainant commenced and carried on the suit for Wright, in the Circuit Court of the United States, and recovered the land at the July term, 1856. There is no proof of any actual delivery of the agreement with Wright, by complainant to the defendant.

The defendant insists, that it was in pursuance of the original agreement with complainant, that he should have the benefit of their services; that they were rendered for him, and he was entitled to the full benefit of them, by his contract of March 20, 1854.

There is evidence tending to show that complainant was acting in his negotiations with Wright for the benefit of the defendant, and he did not hesitate to admit, on all occasions, that it was so, but the question comes up, was it in pursuance of the agreement of March 20, 1854? That agreement is of a very definite and limited character, and embraces only the business of the defendant. This arrangement with Wright was not the defendant's business, nor did he have any interest in it. He had utterly failed to make any arrangement with Wright for the purchase of any part of the property, and it was not until he had failed, that the complainant's skill and ingenuity suggested a way by which he could get an interest in the lands, which if he did obtain, he would convey to defendant. But was he to assign the benefit of his contract with Wright for nothing? Was he to pay out his labor, time and intellect in establishing Wright's title, for one-tenth of the whole, and of great value, worth twenty or thirty thousand dollars, and

bestow it upon the defendant for no consideration whatever? This does not seem reasonable, and while it is admitted he was negotiating for the defendant's benefit, it is inadmissible that he was doing so gratuitously, or under any contract. The services rendered Wright do not come under the stipulations of any contract to labor for the defendant.

There is proof of some agreement between these parties as to the terms on which complainant was to assign the agreement made with Wright to complainant. Defendant did not deny there was to be a partnership formed. He did not deny he was to pay complainant's debts, he only insisted that such purchases as he might make of Wright, particularly, were not to be entered in the agreement. There is no proof to show that at this time any purchase of Wright was contemplated. The defendant had failed, long before, to make any purchase of Wright. The assignment purports to have been for the consideration of one thousand dollars. The defendant received the assignment so written, and it must be understood, in the absence of all proof on the point, that that was the price agreed upon by the parties at the time, and the defendant ought to show that he has paid that consideration. The bill prays to cancel the assignment, and for general relief. We cannot, under the proof, allow the special prayer, but we can, under the general prayer, decree that the defendant pay to complainant the sum of one thousand dollars, being the amount of the consideration expressed in the assignment of Wright's contract with complainant, with interest from the date of the assignment, and that execution issue therefor; and this we do decree.

This will be doing equity between the parties. The decree of the court below is reversed.

The agreement of March 20 was terminated by notice, and for this service in obtaining one-tenth of Wright's land, the complainant has estimated it to be worth one thousand dollars, and the defendant has assented to it, by taking possession of, and recording the agreement and assignment.

*Decree reversed.*